UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW STRONG,

    Plaintiff,

vs.                                                                                               Case No. 16-14169

PASSPORT AUTO LOGISTICS, LLC                   HON. AVERN COHN
d/b/a PASSPORT TRANSPORT,

    Defendant.
_____/

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## DENYING DEFENDANT'S MOTION FOR SANCTIONS FOR SPOLIATION OF
## EVIDENCE (Doc. 14)[1]

I. Introduction

This is a negligence case. Plaintiff Andrew Strong (Strong) is suing defendant Passport Auto Logistics, LLC d/b/a Passport Transport (Passport) claiming that it damaged the convertible top of his 2006 Ferrari Spider F430 (Ferrari) while it was in its custody. Strong's claim is grounded in state bailment law.

Before the Court is Passport's motion for summary judgment on the grounds that Strong has no admissible evidence showing Passport caused the damage. Also before the Court is Passport's motion for sanctions for spoliation of evidence on the grounds that Strong repaired the convertible top before Passport was given the opportunity to inspect it, thus preventing the ability to determine the cause of the damage. For the

---

[1]Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

reasons that follow, Passport's motion for summary judgment will be granted and its motion for sanctions will be denied.

## II. Background

The material facts as gleaned from the parties' papers follow:[2]

Strong purchased the Ferrari in March of 2012 or 2013.

In August 2015, Strong participated in the Ferrari Club of America International Annual Meet, which was held that year in Monterey, California.

On July 28, 2015, Strong delivered the Ferrari to Cauley Ferrari (Cauley), a dealership located in West Bloomfield Township, Michigan.

Cauley arranged for the Ferrari to be shipped to California by Passport.

Passport loaded the Ferrari on August 3, 2015 at Cauley.

Passport delivered the Ferrari to its warehouse in Salinas, California on August 8, 2015.

On August 15, 2015 at approximately 5:00p.m., Strong arrived at the warehouse in California and took possession of the Ferrari. He did not observe any defects with the convertible top at the time he picked it up.

Strong drove the Ferrari to a Hilton Hotel in Monterey, California the evening of August 15, 2015. He parked the Ferrari in an outside parking lot at the Hilton Hotel

---

[2]The parties partially, at best, complied with the Court's motion practice guidelines for a motion for summary judgment. Passport filed a statement of material facts not in dispute (Doc. 15) with citations to the record. Strong responded to the statement within the body of its response brief, not in a separate document as required. Also, there is no joint statement of material facts as required. Neither party highlighted their exhibits. Finally, Passport relies on the affidavits of James Miller and Ed Watts of Passport. Neither affidavit is signed or notarized. Be that as it may, the record is sufficiently complete so as to enable a decision on the motion.

overnight.

The next morning at 10:00a.m., Strong attempted to engage the convertible top; it would not open.

Strong did not witness the loading of the Ferrari onto a Passport trailer for shipping to California. Strong did not see the unloading of the Ferrari from the Passport trailer after it was delivered to the warehouse in California.

Passport transported the Ferrari back to Cauley in Michigan at some point in late August. On September 10, 2015, an employee from Cauley emailed Strong about the Ferrari's top, stating it was "not sure how this happened" and it "does not occur naturally" and that he was "not sure how the transport driver could have caused this unless something interfered with the tonnea cover during the opening/closing process causing the linkage to bend."

Strong later stored the Ferrari for the winter at Studio 47 in Columbus, Ohio, a warehouse facility which also does repairs. On October 6, 2015, Strong directed Studio 47 to perform several repairs on the Ferrari, including repairs to the convertible top. A document from the owner of Studio 47, undated, regarding the condition of the top and repairs states:

> Upon taking delivery of Mr. Strongs 430 it was immediately apparent that the convertible top boot cover was severely misaligned. After further inspection it appeared that it had been pushed toward to rear of the car while it was partially open. This caused the cover to bow up in the center and slightly bend the lift arms. There are areas that shown that it made symmetrical contact on both sides of the leading edge of the cover. We were able to make adjustments so the top is functional but were unable to make the panel gaps correct. It is my estimation that the lift arm mechanisms will need to be replaced and the cover will need to be repaired or replaced. As is takes factory diagnostic equipment to calibrate these tops the work must be done at a recognized Ferrari repair facility.

Strong later took the Ferrari to Cauley for an inspection. On May 31, 2016, the same Cauley employee which first described the convertible top emailed him about the inspection results, stating in part:

> we have inspected your convertible top damage and believe that there must have been an incident where the tonneau boot was trying to open but was blocked by something in it's path of operation and we have found a few areas on the tonneau lid that indicate that it has in fact impacted something causing the mechanisms on the left and right side to the tonneau lid have been bent out of proper position and not allowing the tonneau lid to move open enough to allow the convertible top to come out of the boot.
> It also appears that the canvas on the convertible top may have also been damage [sic] as a result of the softop trying to come out when the tonneau lie was "not" in the proper position and had damaged the softop cloth as well during this event.
> . . . . there is a very high possibility that this may have occurred by an operator trying to open or close your convertible top while it was in the cargo area of the transporter and became damaged at that point and was not revealed to you until later after you of course attempted to use the top and found the malfunction top problem.

On August 12, 2016, Strong filed this lawsuit.

At some point prior to December 1, 2016, the Ferrari was transported to Naples, Florida by Reliable Transportation for a Ferrari event on December 1, 2016.

On March 10, 2017, Passport's expert inspected the Ferrari. As to the convertible top, the report states the following damage was observed:

- Cuts on the driver's side convertible top
- Impact damage from the convertible top to the underside of the rear passenger compartment cover

The report goes on to state:

> the cause(s) of the damage observed at the ESi inspection is related to operation of the top with a potentially compromised hydraulic system and subsequent damage from contineud operation of the convertible top in this condition.
> The subject vehicle was not preserved in the alleged post incident condition by the owner of the vehicle. As a result, ESI's analysis is limited to the

4

information and photographs provided in combination with the inspection of the vehicle.

The repair records provided reflect problems and repairs to the convertible top on the subject vehicle nominally a year prior to the alleged incident.

### III. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  In so doing, the Court "must view the evidence in the light most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

5

IV. Analysis

A. Preemption

1.

Although not raised by Passport, there is a threshold question as to whether Strong's state law bailment claim is preempted under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11706.[3] Originally enacted in 1906, the Carmack Amendment provides standardized rules of common-carrier liability for interstate shipments on roads and rails. CNA Ins. v. Hyundai Merch. Marine Co., Ltd., 747 F.3d 339, 354 (6th Cir. 2014). The Carmack Amendment "created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." Exel, Inc. v. S. Refrigerated Transp., Inc., 807 F.3d 140, 148 (6th Cir. 2015). The Carmack Amendment "fully preempt[s] state law concerning the liability of interstate rail and road carriers." Id. (citing Adams Express Co. v. Croninger, 226 U.S. 491, 505–06 (1913)).

The Carmack Amendment covers "[a]lmost every detail of the subject" of liability

---

[3] 49 U.S. Code § 11706, entitled "Liability of rail carriers under receipts and bills of lading" provides in part:
(a) A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this part are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this subsection is for the actual loss or injury to the property caused by—
    (1) the receiving rail carrier;
    (2) the delivering rail carrier; or
    (3) another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.

6

between shippers and carriers engaged in interstate transport of goods so "that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it." W. D. Lawson & Co. v. Penn Cent. Co., 456 F.2d 419, 422 (6th Cir. 1972). "[T]he Carmack Amendment has completely occupied the field of interstate shipping" and its "preemptive force [is] exceedingly broad." Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc., 762 F.3d 332, 333 (3d Cir. 2014). "When it applies, the Carmack Amendment 'provide[s] the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier ... [and] the complete pre-emption doctrine applies.' " Solectron USA ex rel. Fid. & Deposit Co. of Md. v. Fedex Ground Package Sys., Inc., 520 F. Supp. 2d 904, 907–08 (W.D. Tenn. 2007) (quoting Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003)) (emphasis omitted); see also Am. Synthetic Rubber Corp. v. Louisville & N. R. Co., 422 F.2d 462, 466 (6th Cir. 1970) (affirming dismissal of state-law breach-of-contract and negligence claims because "when damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, the Carmack Amendment governs"); W. D. Lawson & Co., 456 F.2d at 421 (vacating district court order denying motion to dismiss and remanding for dismissal because the "Carmack Amendment preempted common law suits"); Certain Underwriters, 762 F.3d at 333 ("[T]he Carmack Amendment preempts all state law claims for compensation for the loss of or damage to goods shipped by a ground carrier in interstate commerce."). The Carmack Amendment only applies to shipping contracts that begin in one state and terminate in another. It does not apply to shipping contracts

7

where shipment begins and ends in the same state. CNA Ins., 747 F.3d 339 at 354.

2.

Here, Strong has sued for damages arising from the interstate transportation of goods from Michigan to California. Passport is an interstate common carrier as shown by the bill of lading for the transport of the Ferrari. As such, Strong's bailment claim must be dismissed as preempted by the Carmack Amendment.

B. Bailment/Negligence

However, in an abundance of caution, the Court will consider Passport's summary judgment argument which is essentially that no reasonable juror could find for Strong on his bailment claim based on the undisputed facts.

1.

A bailment exists when a bailor delivers personal property to a bailee "in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished." Goldman v. Phantom Freight, Inc., 162 Mich. App. 472, 479-80 (1987). To establish a prima facie case of negligence on behalf of the bailee, the bailor must establish the existence of a bailment and that the property is returned in a damaged condition, thus creating a presumption of negligence. Columbus Jack Corp v. Swedish Crucible Steel Corp, 393 Mich. 478, 483-484 (1975). The bailee may rebut that presumption by proving that the bailee exercised due care under the circumstances. Id. at 486.

2.

Here, Passport says that Strong is not entitled to a presumption of negligence because Passport did not have exclusive control of the Ferrari during the relevant time. The Court agrees. The Ferrari was dropped off at Cauley on July 28, 2015. Passport did not pick up the Ferrari until a few days later, on August 3, 2015. The Ferrari was then transported to a Passport warehouse in California. Strong picked it up on August 15. He did not notice the damage until the next morning, August 16. Thus, Passport was not in exclusive control during the entire relevant time. As such, Strong is not entitled to a presumption of negligence and instead must show that Passport was negligent.

3.

To succeed on a negligence claim in Michigan, a plaintiff must prove that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." Hill v. Sears, Roebuck and Co., 492 Mich. 651, 660 (Mich. 2012) (quoting Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C., 489 Mich. 157, 162 (Mich. 2011)). The general standard of care applicable in negligence cases is the care that a reasonably careful person would use under the circumstances. Case v. Consumers Power Co., 463 Mich. 1, 7 (2000) (citing Moning v. Alfono, 400 Mich. 425, 443 (1977); Detroit & M.R. Co. v. Van Steinburg, 17 Mich. 99, 118–119 (1868)).

4.

Passport says that Strong cannot establish that it was negligent based on the record. Passport says that the cause of the damage to the convertible top is speculative at best. Passport says that Strong's deposition testimony, the statements

9

from the Cauley employee, and the statement from Studio 47 do not establish that Passport was negligent in transporting the Ferrari. The Court agrees. From this record, no one knows what caused the damage or when it was damaged. Neither Strong, the Cauley employee, or the owner of Studio 47 are purported to be experts able to opine on what caused the damage or when it occurred. The statements, set forth above, merely say what they think might have happened. This is insufficient. Further complicating the issue is the fact that Strong had some repairs made to the convertible top before Passport's expert inspected it. Thus, it is virtually impossible to determine the cause because the Ferrari was not in the same condition as when Strong first discovered the top was non-functional. Moreover, Passport offers the affidavits, albeit unsigned, from the Passport employees who actually transported the Ferrari. They state that at no time during loading, transporting, or unloading did they engage the convertible top.[4]

---

[4] Strong also argues that even if the cause of the damage cannot be determined, he can prevail under the doctrine of res ipsa loquitur. It is not clear whether the doctrine applies in Michigan, see McLennan v. Home Depot U.S.A., Inc., 10 F.Supp.2d 837, 839 (E.D. Mich.1998) (noting that "though Michigan does not purport to follow the doctrine of res ipsa loquitur, it achieves the same result by allowing negligence to be inferred from circumstantial evidence."). Assuming the doctrine applies, res ipsa loquitur generally involves the following elements:
>   1. The event must be of a kind which ordinarily does not occur in the absence of someone's negligence.
>   2. The event must have been caused by an agency or instrumentality within the exclusive control of the defendant.1
>   3. The event must not have been due to any voluntary action or contribution on the part of the plaintiff.
>   4. Evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

Gadde v. Michigan Consolidated Gas Co., 377 Mich. 117, 124 (1966). The doctrine does not apply for the simple reason that, as explained supra, Passport did not have exclusive control over the Ferrari during all relevant times.

## V. Conclusion

For the reasons stated above, Strong's claim is preempted. And even absent preemption, no reasonable juror could find for Strong based on the record. Passport's motion for summary judgment is GRANTED. This case is DISMISSED. In light of this determination, the Court in its discretion DENIES Passport's motion for sanctions.

SO ORDERED.

                                                  S/Avern Cohn
                                                  AVERN COHN
                                                  UNITED STATES DISTRICT JUDGE

Dated: January 10, 2018
       Detroit, Michigan